**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE INOVIO PHARMACEUTICALS, INC. DERIVATIVE LITIGATION | Lead Case No. 2:20-cv-01962-GJP |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**<u>MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………...   1

II.     FACTUAL BACKGROUND………………………………………………..   3

III.    PROCEDURAL BACKGROUND…………………………………………..   7

        A.  The Federal Action……………………………………………………..   7

        B.  The Delaware Chancery Action………………………………………...   8

        C.  The Demands………………………………………………...........   9

        D.  Settlement Negotiations……………………………………...............   10

IV.     TERMS OF THE SETTLEMENT………………………………………..   11

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL…………...............   12

        A.  Applicable Legal Standards…………………………………………….   12

        B.  The Settlement Is Within the Range of Possible Final Approval…............   13

            1.  The Settlement Is the Product of Arm's Length Negotiations and
                Is Therefore Presumptively Fair and Reasonable…………………   13

            2.  The Settlement Confers Substantial and Material Benefits on
                Inovio……………………………………………………………...   15

            3.  The Settlement Appropriately Balances the Significant Risks of
                Continued Litigation with the Benefits Conferred Upon Inovio
                and Its Stockholders…………………………………………….   16

VI.     THE NOTICE PROCEDURES OUTLINED IN THE STIPULATION ARE
        REASONABLE…………………………………………………………...   19

VII.    PROPOSED SCHEDULE………………………………………………...   19

VIII.   CONCLUSION…………………………………………………………   20

i

## TABLE OF AUTHORITIES

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ....................................................... 16

*Bradburn Parent Teacher Store, Inc. v. 3M*
  *(Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322 (E.D. Pa. 2007) ................................... 19

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995) ....................................................... 2

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) ............................................... 13

*In re Apollo Grp., Inc. Sec. Litig.*,
  2008 WL 3072731 (D. Ariz. Aug. 4, 2008), 2010 WL 5927988................................ 18

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2004 WL 1068807 (E.D. Pa. May 11, 2004) ............................................. 12, 13, 14

*In re Chickie's & Pete's Wage & Hour Litig.*,
  2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ....................................... 14-15

*In re Fab Universal Corp. S'holder Deriv. Litig.*,
  148 F. Supp. 3d 277 (S.D.N.Y. 2015) ........................................... 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................... 18

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 359 (N.D. Ohio 2001) ............................................... 13

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
  961 F. Supp. 2d 708 (E.D. Pa. 2014) ........................................... 2

*In re NVIDIA Corp. Derivative Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ................................. 12

*In re Sch. Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1990) ................................................... 18

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ................................................... 18

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ................................................... 16, 17, 18

*Mehling v. New York Life Ins. Co.,*
 246 F.R.D. 467 (E.D. Pa. 2007) ...................................................................... 13, 14

*Mills v. Elec. AutoLite Co.,*
 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) .......................................... 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
 688 F.2d 615 (9th Cir. 1982) ............................................................................... 15

*Shlensky v. Dorsey,*
 574 F.2d 131 (3d Cir. 1978) ................................................................................ 15

*Tenuto v. Transworld Sys., Inc.,*
 2001 WL 1347235 (E.D. Pa. Oct. 31, 2001) ........................................................ 13

*Thomas v. NCO Fin. Sys., Inc.,*
 2002 WL 1773035 (E.D. Pa. July 31, 2002) ........................................................ 13

*Todd v. STAAR Surgical Co.,*
 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ....................................................... 14

*Unite Nat. Ret. Fund v. Watts*
 2005 WL 2877899 (D.N.J. Oct. 28, 2005) ........................................................... 15

## STATUES, RULES & OTHER AUTHORITIES

7 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22.110 (4th ed. 2022) ............ 12

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*:
Civil 3D §1839 (2007) ........................................................................................... 12

Fed. R. Civ. P. 23.1 ........................................................................................... 1, 12

*Manual for Complex Litig.* (Fourth) §21.632 (2004) ................................................ 12

*Manual for Complex Litig.* (Fourth) §23.14 (2004) ................................................. 13

8 Del. C. Section 220 ................................................................................ 1, 10, 8, 9

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, plaintiffs Pedram Beheshti ("Beheshti"), Arthur Isman ("Isman"), Krishna Kishor Devarakonda ("Devarakonda"), Brian Foster ("Foster"), and Brandon Fettig ("Fettig") (collectively, the "Federal Plaintiffs"), on behalf of Inovio Pharmaceuticals, Inc. ("Inovio" or the "Company"), respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement.  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated March 31, 2023 (the "Stipulation"), attached hereto as Exhibit A.  Specifically, the Federal Plaintiffs respectfully request that this Court enter an order providing for, among other things: (i) preliminary approval of the Settlement[1] as set forth in the Stipulation; (ii) approval of the method of providing notice of the Settlement to Current Inovio Stockholders; (iii) approval of the form of the Notice attached as Exhibit C to the Stipulation; and (iv) setting a date for the Settlement Hearing for the purpose of determining whether the Settlement should be finally approved as fair, reasonable, and adequate.[2]

## I.      INTRODUCTION

The proposed Settlement resolves breach of fiduciary duty and related claims predicated on allegations that between February 14, 2020 and September 28, 2020 (the "Relevant Period"), at least, the Individual Defendants (defined, *infra*): (a) issued and/or caused the Company to issue

---

[1]      Unless noted otherwise, all capitalized terms used herein shall have the same meaning as set forth in the Stipulation.

[2]      The Settlement will also resolve the related shareholder derivative action pending in the Delaware Court of Chancery (the "Chancery Court") captioned *Schumacher v. Benito, et al.*, C.A. No. 2022-0292-KJSM (the "Delaware Chancery Action," and together, with the above-captioned Federal Action, the "Derivative Actions") brought by Leo Schumacher ("Schumacher", and together with the Federal Plaintiffs, the "Derivative Plaintiffs"), as well as the inspection demands pursuant to 8 *Del. C.* § 220 ("Section 220") and the joint litigation demand (the "Demands") made by stockholders Rita Azrelyant ("Azrelyant") and Lydia Grech ("Grech") (the "Stockholders", and together with the Derivative Plaintiffs, the "Plaintiffs").  The Derivative Actions and the Demands are collectively referred to herein as the "Derivative Matters."

false and misleading statements and omissions to the public regarding the Company's COVID-19 vaccine candidate ("INO-4800"), the amount of time it took the Company to develop INO-4800, and Inovio's capacity to manufacture the vaccine; (b) failed to maintain adequate internal controls; and (c) engaged in improper insider selling.  The Settlement commits Inovio's Board of Directors (the "Board") to the adoption, implementation, and maintenance of a comprehensive package of corporate governance and oversight reforms at Inovio (the "Reforms"), which will significantly enhance long-term shareholder value and protect Inovio and its shareholders from a repeat of these recent damaging events.  Significantly, Inovio has expressly acknowledged and agreed that the Reforms confer substantial benefits to Inovio and Inovio's shareholders.

In determining whether preliminary approval of the Settling Parties' proposed Settlement is warranted, the sole issue before the Court is whether the Settlement is within the range of what could be found to be fair, reasonable, and adequate so that notice can be given to Current Inovio Stockholders and a Settlement Hearing can be scheduled for the Court to consider final approval of the Settlement.  *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014).  The Settlement is the product of substantial effort, advocacy, and arm's-length negotiations conducted by skilled and experienced counsel for Plaintiffs, the Individual Defendants,[3] and nominal defendant Inovio.[4]  The Settlement guarantees Inovio the substantial benefits of the Reforms

---

[3]     The "Individual Defendants" are J. Joseph Kim ("Kim"), Simon X. Benito ("Benito"), Angel Cabrera ("Cabrera"), Ann C. Miller ("Miller"), Jay P. Shepard ("Shepard"), David B. Weiner ("Weiner"), Wendy L. Yarno ("Yarno"), Lota S. Zoth ("Zoth"), Peter D. Kies ("Kies"), Robert J. Juba, Jr. ("Juba"), Jacqueline Shea ("Shea"), Michael W. Cordera ("Cordera"), and Laurent Humeau ("Humeau").

[4]     Inovio and the Individual Defendants are referred to collectively herein as the "Defendants."

provided for in the Stipulation, which will improve the Company's internal controls and directly address the alleged deficiencies that Plaintiffs contend resulted in the alleged wrongdoing. Accordingly, in recognition of the substantial benefits conferred upon Inovio as a result of the initiation, prosecution, and settlement of the Derivative Actions and the Demands, the Stipulation further provides that the Company shall pay Plaintiffs' Counsel the agreed-to Fee and Expense Amount of $1,175,000, subject to Court approval.  The Settling Parties negotiated this agreed-to Fee and Expense Amount after the material terms of the Settlement had been agreed upon and ultimately accepted a double-blind mediator's proposal from Michelle Yoshida, Esq. ("Ms. Yoshida" or the "Mediator"), an experienced mediator with Phillips ADR Enterprises ("Phillips ADR").  The Settling Parties' recommendation that the Court preliminarily approve the Settlement is based on their joint belief that the Settlement confers substantial benefits upon, and is in the best interests of, Inovio and Current Inovio Stockholders, as informed by their respective investigations, rigorous evaluation of the strengths and weaknesses of the claims and defenses, and careful evaluation of the value of the Reforms, when weighed against the risks, costs, and delays that would arise from attempting to improve the result through lengthy and costly continued litigation.

For these reasons, Plaintiffs respectfully request that the Court enter an Order granting preliminary approval of the Settlement, approving the form, content, and dissemination of the Notice, and setting a date for a Settlement Hearing.

## II.     FACTUAL BACKGROUND

Inovio, a Delaware corporation headquartered in Plymouth Meeting, Pennsylvania, is a biotechnology company that develops and commercializes DNA medicines to treat and cure infectious diseases.  Starting in January 2020, Inovio aspired to design a vaccine to address the emerging COVID-19 crisis. Inovio viewed the pandemic as a significant opportunity, investing

heavily in its vaccine candidate, INO-4800.  In the Derivative Matters, Plaintiffs allege that during the Relevant Period the Individual Defendants made, or permitted the dissemination of, materially false and misleading statements and/or failed to disclose material facts concerning the Company's ability to produce specified numbers of doses of INO-4800.

On February 14, 2020, defendant Kim, the Company's then-President and Chief Executive Officer, publicly represented that the Company had "construct[ed] [its] vaccine . . . in about three hours." On March 2, 2020, defendant Kim again stated the Company was "able to fully construct [its] vaccine within three hours."  On March 9, 2020, *Citron Research* called for an investigation by the U.S. Securities and Exchange Commission (the "SEC") into "the ludicrous and dangerous claim that [Inovio] designed a vaccine in 3 hours."  Inovio then acknowledged that the Company had only designed a vaccine construct, not a working vaccine, and denied any wrongdoing in connection with defendant Kim's statements.

Years earlier, in 2008, Inovio had sold its manufacturing operations to VGXI, Inc. ("VGXI") and entered into an agreement vesting VGXI with the right of first refusal to manufacture the Company's vaccines (the "Supply Agreement").  On March 24, 2020, despite the Supply Agreement with VGXI, Inovio represented that the U.S. Department of Defense ("DoD") had paid Ology Bioservices, Inc. ("Ology") $11.9 million to facilitate Inovio's "technology transfer to rapidly manufacture DNA vaccines" and added that the partnership with Ology "'increases Inovio's manufacturing capabilities for [INO-4800] and establishes an additional DNA vaccine manufacturing facility to protect the U.S. military.'"

On April 30, 2020, Inovio issued a press release stating the Company's plan to deliver one million doses of INO-4800 by the end of 2020, and that this plan was being backstopped by the engagement of yet another vaccine manufacturer, Richter-Helm BioLogics GmbH & Co. KG

("Richter-Helm").  The press release also noted that the Richter-Helm partnership "'is critical as we scale up our INO-4800 production'" to meet the goal of one million doses by the close of 2020.

On May 7, 2020, VGXI formally terminated its Supply Agreement with Inovio and formally denied Inovio's request to transfer technology to Ology and Richter-Helm.  Four days later, on May 11, 2020, defendant Kim assured stockholders that Inovio was "on track" to deliver one million doses of INO-4800 in 2020, and hundreds of millions of doses beginning in 2021 and beyond, made possible by "relying on our current contract manufacturers of plasmids and adding on additional manufacturers that can help us scale."

The Company's Quarterly Report on SEC Form 10-Q, filed on August 10, 2020, continued to publicly tout the development of INO-4800, reporting that Inovio had received grants totaling $17.2 million from various entities for the development of INO-4800 and the Company's "CELLECTRA 3PSP" device for the delivery of INO-4800.  In addition, the Company announced that it had entered into an agreement with the DoD to develop the CELLECTRA 3PSP device and INO-4800, and that approximately $54.5 million in funding had been made available to Inovio under that agreement.

Plaintiffs allege in the Derivative Matters, however, that the Individual Defendants failed to disclose by this time that the U.S. Food and Drug Administration (the "FDA") had already placed a clinical hold on INO-4800 in June 2020, and that Inovio lacked the manufacturing capacity to produce INO-4800 in any meaningful quantities.

On June 3, 2020, because VGXI had not granted Inovio's request to transfer technology to Ology and Richter-Helm, Inovio filed a lawsuit against VGXI in the Court of Common Pleas of Montgomery County, Pennsylvania (the "Pennsylvania Court"), captioned *Inovio Pharmaceuticals Inc. v. Geneone Life Science Inc., et al.*, Case No. 2020-06554 (the "VGXI

Litigation").  Inovio petitioned the Pennsylvania Court to keep the entire case under seal, but the Company's request was denied.  Accordingly, certain information emerged publicly during the VGXI Litigation which served as the basis, in part, for Plaintiffs' allegations in the Derivative Matters that certain public statements in April, May, and June 2020 by the Individual Defendants were false and misleading.[5]

On June 25, 2020, the Pennsylvania Court denied Inovio's prayer to order VGXI to hand over its intellectual property and technology in the VGXI Litigation. The next day, June 26, 2020, Inovio provided notice that it would appeal the Pennsylvania Court's ruling. In July 2020, VGXI filed counterclaims against Inovio for breach of contract, unfair competition, misappropriation of trade secrets, and unjust enrichment in the VGXI Litigation.[6]

On September 28, 2020, Inovio issued a press release disclosing that the FDA had "notified the company it has additional questions about the company's planned Phase 2/3 trial of...INO-4800" and "[u]ntil the FDA's questions have been satisfactorily addressed, INOVIO's Investigational New Drug Application (IND) for the Phase 2/3 trial is on partial clinical hold."  On this news, the Company's stock price fell from an opening price of $16.94 per share to $12.14 per share on September 28, 2020.  Plaintiffs alleged in the Derivative Matters that prior to these disclosures and the resulting stock drop, between June 30, 2020 and July 30, 2020, while the

---

[5]     For example, according to Inovio's complaint in the VGXI Litigation, by March 2020, defendant Juba, Inovio's Senior Vice President, Biological Manufacturing & Supply Chain, reported that Inovio's management concluded that reaching one million doses in 2020 with VGXI was impossible "as a matter of basic mathematics."  Also, according to Inovio's complaint, it was known at Inovio that "VGXI has no available capacity in the near term to manufacture any of Inovio's products and cannot manufacture products for commercial sale as it lacks the necessary approvals and facility."

[6]     VGXI also sued Ology, asking the Pennsylvania Court to, *inter alia*, enjoin Inovio from transferring VGXI's technology.

Company's stock price was artificially inflated, certain of the Individual Defendants sold shares of their personally held Inovio stock while in possession of material, non-public information.

On March 12, 2020, several Inovio investors initiated a securities class action lawsuit in this Court against the Company and defendant Kim, captioned *McDermid v. Inovio Pharmaceuticals, Inc., et al.*, Case No. 2:20-cv-01402 (the "Securities Class Action"). The Securities Class Action, which was sustained in part on February 16, 2021, alleged substantially the same false and misleading statements challenged by Plaintiffs in the Derivative Matters.[7]

## III. PROCEDURAL BACKGROUND

### A. The Federal Action

On April 20, 2020, plaintiff Beheshti filed a Verified Shareholder Derivative Complaint on behalf of Inovio against defendants Kim, Benito, Cabrera, Miller, Shepard, Weiner, Yarno, and Zoth (the "Federal Action Defendants") in the Federal Action, formerly captioned *Beheshti v. Kim, et al.*, Case No. 2:20-cv- 01962, asserting claims for breaches of fiduciary duty, unjust enrichment, and for violations of the Exchange Act. On June 5, 2020, plaintiff Beheshti and the Federal Action Defendants filed a stipulation to stay the case until the entry of an order denying the motion to dismiss the amended complaint in the related Securities Class Action. The Court entered an order staying the case the same day.

On June 12, 2020, plaintiff Isman filed a Verified Shareholder Derivative Complaint on behalf of Inovio in this Court against defendants Benito, Kim, Miller, Shepard, Weiner, Yarno, and Zoth in an action captioned *Isman v. Benito, et al.*, Case No. 2:20-cv-02817-GJP (the "*Isman* Action"), asserting claims substantially similar to those in the Federal Action.

On June 15, 2020, plaintiffs Devarakonda and Foster filed a Verified Shareholder

---

[7]     On February 1, 2023, this Court entered an order finally approving the settlement of the Securities Class Action.

Derivative Complaint on behalf of Inovio in this Court against the Federal Action Defendants in an action captioned *Devarakonda, et al. v. Kim*, Case No. 2:20-cv-02829-GJP (the "*Devarakonda* Action"), asserting claims substantially similar to those in the Federal and *Isman* Actions.

On July 7, 2020, plaintiff Fettig filed a Verified Shareholder Derivative Complaint on behalf of Inovio in the Court against the Federal Action Defendants in an action captioned *Fettig v. Kim, et al.*, Case No. 2:20-cv-03316 (the "*Fettig* Action"), asserting claims substantially similar to those in the Federal, *Isman*, and *Devarakonda* Actions.

On July 14, 2020, plaintiffs Beheshti, Isman, and Devarakonda filed a joint motion to consolidate their three derivative actions and appoint co-lead counsel. On July 21, 2020, the Court issued an order consolidating those three actions into the lead case, captioned *In re Inovio Pharmaceuticals, Inc. Derivative Litigation*, Lead Case No. 2:20-cv-01962-GJP (E.D. Pa.) (the "Federal Action"), and appointing co-lead counsel.

On August 27, 2020, the Court issued an order consolidating the *Fettig* Action with the Federal Action. The Federal Action was thereafter stayed pursuant to the terms set forth in the order entered by the Court on June 5, 2020.

### B.    The Delaware Chancery Action

On July 28, 2020, plaintiff Schumacher sent an inspection demand to Inovio pursuant to 8 *Del. C.* § 220 ("Section 220"), seeking to exercise his right as a stockholder to inspect specific books and records relating to the development and manufacture of INO-4800, as well as the public statements concerning the production and FDA approval timeline for INO-4800.  In response, Inovio produced more than 1,400 pages of internal, Board-level documents to plaintiff Schumacher.

On March 28, 2022, plaintiff Schumacher filed a Verified Stockholder Derivative Complaint incorporating information from the documents produced pursuant to his Section 220

demand, under seal in the Delaware Chancery Action on behalf of Inovio against defendants Benito, Kim, Miller, Shepard, Weiner, Yarno, Zoth, and Cabrera in the Chancery Court, alleging, *inter alia*, breaches of fiduciary duty and unjust enrichment.   On March 31, 2022, plaintiff Schumacher filed a public version of his Verified Stockholder Derivative Complaint, redacting information from the confidential materials produced pursuant to the Section 220 demand cited in his complaint.

On May 3, 2022, the parties in the Delaware Chancery Action filed a stipulation with the Chancery Court requesting a stay of the Delaware Chancery Action pending resolution of a motion to dismiss in the Securities Class Action.  The Chancery Court granted the stay on May 4, 2022.

On September 2, 2022, plaintiff Schumacher informed defense counsel in the Delaware Chancery Action that, pursuant to paragraph 2 of the May 4, 2022 stipulation, he no longer consented to the stay in light of the proposed settlement of the Securities Class Action.  On October 17, 2022, the parties in the Delaware Chancery Action filed a status report, advising the Chancery Court that plaintiff Schumacher had terminated the stay and that the parties were meeting and conferring about a mutually agreeable schedule.

Following additional discussions, on November 14, 2022, the parties to the Delaware Chancery Action informed the Chancery Court of their agreement to submit the Delaware Chancery Action to mediation in January 2023. On February 15, 2023, the parties informed the Chancery Court of their continuing discussions regarding a resolution.

C.    **The Demands**

On March 26, 2021, Grech sent an inspection demand to Inovio pursuant to Section 220, seeking to exercise her right as a stockholder to inspect specific books and records relating to the development and manufacture of INO-4800, as well as the public statements concerning the production and FDA approval timeline for INO-4800. In response, Inovio produced over 1,400

pages of internal, Board-level documents to Grech.

On April 16, 2021, Azrelyant sent an inspection demand to Inovio pursuant to Section 220, seeking to exercise her right as a stockholder to inspect specific books and records relating to the development and manufacture of INO-4800, as well as the public statements concerning the production and FDA approval timeline for INO-4800. In response, Inovio produced over 1,400 pages of internal, Board-level documents to Azrelyant.

Counsel for Grech and Azrelyant subsequently agreed to work together and, on September 15, 2021, served a joint litigation demand on the Board to investigate and bring action against the Individual Defendants for, *inter alia*, breach of their fiduciary duties. In response to the Demands, counsel for Inovio's Board secured tolling agreements with each of the individuals alleged by Grech and Azrelyant to have breached their fiduciary duties. Additionally, the Board deferred its investigation pending resolution of the various related securities and derivative litigation matters.

### D.    Settlement Negotiations

On October 18, 2021, the Federal Plaintiffs sent a settlement demand letter to Defendants that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms designed to address the governance deficiencies that resulted in the wrongdoing alleged in the Federal Action complaints.

In December 2022, Plaintiffs and Defendants agreed to mediate the Derivative Matters to attempt to resolve the claims and potential claims asserted therein. A mediation to be overseen by Ms. Yoshida of Phillips ADR was set for January 18, 2023 (the "Mediation").

On December 20, 2022, Plaintiffs in the Derivative Matters sent a global settlement demand letter to Defendants that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms designed to address the governance deficiencies alleged in the Derivative Matters.

10

On January 10, 2023, in anticipation of the Mediation, Plaintiffs in the Derivative Matters submitted a detailed joint mediation statement to Defendants and the Mediator, addressing relevant arguments and allegations in the Derivative Matters. That same day, Defendants provided Plaintiffs and the Mediator with their own mediation statement.

On January 18, 2023, Plaintiffs and Defendants participated in the full-day Mediation, which certain participants attended in-person while others attended remotely. That day, the Settling Parties were able to reach an agreement in principle on the substantive terms of the Settlement, including the Reforms that Inovio would adopt as consideration for the Settlement.

Following the Settling Parties' agreement in principle on the substantive terms of the Settlement, the Settling Parties separately negotiated the attorneys' fees and expenses to be paid to Plaintiffs' Counsel in consideration of the substantial benefits achieved for the Company through their efforts. On February 17, 2023, the Settling Parties accepted Ms. Yoshida's double-blind mediator's proposal for Inovio to pay $1,175,000 in attorneys' fees and expenses to Plaintiffs' Counsel, subject to Court approval.

As set forth below, the Settlement is fair, reasonable, and adequate, and in the best interests of Inovio and Current Inovio Shareholders.  In addition, the agreed-to Fee and Expense Amount is fair and reasonable.

## IV.    TERMS OF THE SETTLEMENT

As a result of the initiation, prosecution, and settlement of the Derivative Matters, Inovio and Current Inovio Shareholders will benefit from the Reforms, which directly address the alleged Board- and management-level oversight lapses at issue in the Derivative Matters.  As reflected in the Stipulation, Inovio will adopt, implement, and maintain the Reforms, for a minimum of five years.

As discussed in more detail below, the Reforms represent a material and substantial

11

improvement in Inovio's corporate governance structure and will help to prevent a recurrence of the wrongdoing alleged in the Derivative Matters. Courts have recognized that corporate governance reforms such as these "provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, No.06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (quoting *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005)); *accord Unite Nat. Ret. Fund v. Watts*, No. Civ.A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (finding settlement appropriate due to "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement" that "will serve to prevent and protect [the company] from the reoccurrence of certain alleged wrongdoings").

## V.       THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.       Applicable Legal Standards

Settlement and dismissal of stockholder derivative claims requires Court approval. *See* Fed. R. Civ. P. 23.1(c).[8] The "general practice" in shareholder derivative suits is that the parties submit the settlement to the Court for its approval together with a request for a hearing on its propriety. *See* Wright, Miller & Kane, *supra*, §1839. On preliminary approval, the Court "make[s] a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the … proposed settlement, and date of the fairness hearing." *Manual for Complex Litig.* (Fourth) §21.632 (2004); *see also In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004). In

---

[8]       "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in the class action." 7 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22.110, at 476 (4th ed. 2002). Accordingly, in determining the standards applicable to approval of a derivative settlement, "cases involving dismissal or compromise under Rule 23(e) of non-derivative class actions . . . are relevant by analogy." *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*: Civil 3D §1839, at 195 (2007).

determining whether preliminary approval is warranted, the Court is required to determine whether the proposed Settlement discloses grounds to doubt its fairness or other obvious deficiencies and whether it appears to fall within the range of possible approval. *See Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (citing *In re Prudential Sec. Inc. Ltd. P'hips Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *Tenuto v. Transworld Sys., Inc.*, No. CIV.A. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001); *see also Manual for Complex Litig.* (Fourth) § 23.14 (2004). The Court is not required on preliminary approval to make a final determination that the proposed Settlement is fair and reasonable. Preliminary approval is usually granted unless the settlement is "obviously deficient." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (internal citation omitted).

**B.    The Settlement Is Within the Range of Possible Final Approval**

The Settlement was reached through adversarial, arm's-length negotiations by experienced counsel and, thus, is presumptively fair and reasonable. The Settlement falls within the range of reasonableness for purposes of preliminary approval because it provides substantial benefits to Inovio and its stockholders, particularly when balanced against the risks, expense, and uncertainty of continued litigation. Accordingly, the Settlement should be preliminarily approved.

**1.    The Settlement Is the Product of Arm's Length Negotiations and Is Therefore Presumptively Fair and Reasonable**

As stated in *In re Automotive Refinishing*, the preliminary approval analysis "often focuses on whether the settlement is the product of arms-length negotiations." *In re Auto. Refinishing Paint Antitrust Litigation*, 2004 WL 1068807, at *2 (internal citation and quotation omitted); *see also Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (same). "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001). Here,

the Settling Parties reached the proposed Settlement terms through adversarial arm's length negotiations by experienced counsel with the assistance of the highly skilled Mediator, and the Settlement represents a hard-fought, substantial recovery for Inovio.  Courts have recognized that an experienced mediator's involvement in settlement negotiations supports a settlement's fairness and approval.  *See, e.g.*, *Todd v. STAAR Surgical Co.,* 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement facilitated by "experienced mediator Michelle Yoshida of Phillips ADR"); *In re Fab Universal Corp. S'holder Deriv. Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) (finding that the proposed settlement was the result of arms-length negotiations where the parties were represented by experienced counsel and settlement "was the product of extensive formal mediation aided by a neutral JAMS mediator, hallmarks of a non-collusive, arm's-length settlement process.").

The Settling Parties' negotiations began in October 2021 and continued until the Settlement was finally reached in January 2023, which included numerous communications between counsel for all Settling Parties and culminating in the Mediation.  Furthermore, the Settling Parties did not begin negotiating the amount of fees and expenses for Plaintiffs' Counsel until after reaching an agreement in principle regarding the material substantive terms of the Settlement, including the Reforms.  These facts weigh in favor of preliminary approval of the proposed Settlement.  *See, e.g.*, *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 473 (E.D. Pa. 2007) (settlement preliminarily approved where the parties engaged in "hard-fought and lengthy negotiation[s]"); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (preliminary approval granted where settlement was reached after extensive arm's length negotiation between very experienced and competent counsel for the settling parties); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) (recognizing that the fact that attorneys'

14

fees were not negotiated until after the material terms of the settlement had been agreed upon further demonstrated the fairness of the settlement because "the amount of attorneys' fees could not have affected the amount of [the] recovery").

The Settling Parties have each independently considered the Settlement and all agree that it is in the best interests of Inovio and Current Inovio Stockholders.  Significant weight should be attributed to the belief of experienced counsel that a settlement is in the best interest of those affected by the Settlement.  *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 2.      The Settlement Confers Substantial and Material Benefits on Inovio

The Third Circuit has held that the principal factor in determining the fairness of a derivative settlement is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978). The Third Circuit has further acknowledged that corporate governance reforms that "are designed to prevent a reoccurrence of the alleged wrongdoings" provide "immediate and substantial benefits for all parties."  *Unite Nat. Ret. Fund*, 2005 WL 2877899, at *1, *4 (approving derivative corporate governance settlement).

Here, as stated in Exhibit A to the Stipulation, Inovio has acknowledged and agreed that the institution, pendency, and settlement of the Derivative Matters was the primary cause of the Company's decision to adopt, implement, and maintain the Reforms. The benefits conferred upon Inovio and its stockholders as a result of the Settlement are both immediate and long-lasting and are specifically designed to protect Inovio and its reputation for its own benefit and for the benefit of its shareholders.  The Reforms will help bring Inovio's internal procedures into compliance with best practices, provide increased value to the Company, significantly enhance long-term shareholder value, and protect Inovio and its shareholders from a repeat of the recent damaging

events.  Sound and effective corporate governance confers real economic value to publicly traded companies and their shareholders by empowering boards to exercise effective oversight, thereby improving management and producing better operational and risk management decisions, which correlate with higher company profits.  Additionally, improved corporate governance and Board oversight of core operations substantially reduce the risks of costly regulatory and legal exposure and help restore and preserve the Company's credibility with investors.  Courts have long recognized that corporate governance reforms like those provided for in the Settlement here confer a substantial benefit on the corporation.  *See, e.g.*, *Mills v. Elec. AutoLite Co.*, 396 U.S. 375, 395-96, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) (corporation receives "substantial benefit" from a derivative suit and such actions involve "corporate therapeutics" and thus furnish a benefit to all shareholders); *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any [potential] judgment"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (citing Fourth, Fifth, and Sixth Circuit Courts of Appeal precedent that recognize that corporate governance reforms, in general, provide valuable benefits to corporations and their public stockholders).

As Inovio has acknowledged and agreed, the Reforms confer substantial benefits on Inovio and its shareholders, demonstrating that the Court should preliminarily approve the Settlement.

> ### 3. The Settlement Appropriately Balances the Significant Risks of Continued Litigation with the Benefits Conferred Upon Inovio and Its Stockholders

The uncertainties and vagaries of the continued litigation of the Derivative Matters further demonstrate that the proposed Settlement is within the range of final approval.  Although Plaintiffs believed and continue to believe that the Derivative Matters have substantial merit, there exist significant risks in continuing to prosecute the Derivative Matters.  For example, while Inovio

settled the Securities Class Action for a substantial sum, establishing liability was by no means a foregone conclusion in the Derivative Matters.  And even if Plaintiffs were to prevail at the pleading stage, which is no small feat in shareholder derivative litigation (whether in cases alleging pre-suit demand excusal, such as the Derivative Actions, or in cases alleging wrongful pre-suit demand refusal, as Grech and Azrelyant would need to allege if their joint litigation demand were rejected by the Board), continued litigation would involve costly discovery and substantial risks.  Given the obstacles and uncertainties inherent in this complex derivative litigation, the Settlement guarantees immediate, substantial, and lasting benefits, and is unquestionably superior to the very real risk that Inovio might recover nothing after years of costly litigation.

Continued litigation would also be extremely complex, costly, and of substantial duration.  Discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery would be conducted.  Inovio and the Individual Defendants would invariably submit and file motions for summary judgment, which would have to be briefed and opposed by Plaintiffs, as well as argued.  Additionally, a trial would have to be held.  Even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation.  Thus, the substantial benefits and value conferred on Inovio, when compared to the significant expense and uncertainty of continued litigation, support preliminary approval of the Settlement.  *See Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion that any possible benefit to [the company] from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case").[9]

---

[9]     *Maher* recognized that the avoidance of further litigation expenses "both monetarily in the form of litigation fees and expenses, and non-monetarily in the form of disruption and distraction

It is also clear that even a victory at trial is no guarantee that any favorable judgment would ultimately be sustained on appeal or by the trial court.  For example, in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147, 2008 WL 3072731, at *6 (D. Ariz. Aug. 4, 2008), *rev'd and remanded,* No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010), the trial court, on a motion for judgment as a matter of law, overturned a jury verdict of $277 million in favor of stockholders based on insufficient evidence presented at trial to establish loss causation.  The jury verdict was later reinstated on appeal but only after two more years of litigation and legal expenses for the parties. *See In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1.  Add these post-trial and appellate risks to the difficulty and unpredictability of a lengthy and complex trial, and the immediate benefits of the Settlement become clearer and more apparent.

It is for these reasons that courts recognize that derivative litigation is "notoriously unpredictable," and therefore settlements of stockholder derivative actions and other complex litigation are "particularly favored" and are not to be lightly rejected by the courts.  *See Maher*, 714 F.2d at 455; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (courts encourage settlement of complex litigation that "otherwise could linger for years").  This factor weighs in favor of preliminary approval of the Settlement.

---

of management, and threatened impairment of the Corporation's credit and goodwill, are important and valid reasons for seeking a settlement, and may warrant its approval."  *Maher*, 714 F.2d at 467.

## VI.    THE NOTICE PROCEDURES OUTLINED IN THE STIPULATION ARE REASONABLE

The purpose of providing stockholders notice of a proposed settlement is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 328 (E.D. Pa. 2007).  Here, the Settling Parties propose that within ten (10) days after the entry of an order by the Court preliminarily approving the settlement, Inovio shall: (1) post a copy of the Notice and the Stipulation and exhibits thereto on the investor relations page of the Company's website; (2) publish the Notice in *Investor's Business Daily* or issue a press release with *GlobeNewswire*; and (3) file with the SEC the Notice and Stipulation and exhibits thereto as exhibits to an SEC Form 8-K. The Notice shall provide a link to the investor relations page on Inovio's website where the Notice and Stipulation and exhibits thereto may be viewed, which page will be maintained through the date of the Settlement Hearing.

The Notice (attached as Exhibit C to the Stipulation) adequately informs Current Inovio Stockholders of, *inter alia*: (1) the terms of the Settlement; (2) the date, time, and location of the Settlement Hearing; (3) the Settling Parties' principal contentions; (4) the underlying reasons for the Settlement; and (5) the deadline and procedure for objecting to the Settlement and appearing at the Settlement Hearing (while making clear to Current Inovio Stockholders that if they fail to comply with the procedures and deadline for filing objections, they will lose any opportunity to object to any aspect of the Settlement).

Plaintiffs respectfully submit that the proposed forms of notice fully satisfy due process requirements because they will fairly and reasonably apprise Current Inovio Stockholders of the essential terms of the Settlement and afford them an opportunity to present any objections thereto. Accordingly, the Court should approve the Notice and the manner of dissemination the Settling

Parties propose.

## VII.  PROPOSED SCHEDULE

For the Court's consideration, Plaintiffs offer the following proposed schedule for the necessary events leading up to and including the Settlement Hearing.  If this schedule is not convenient for the Court, Plaintiffs respectfully request that the Court utilize similar time intervals for the events in amending the proposed Preliminary Approval Order.

| EVENT | DEADLINE |
|---|---|
| Deadline for: Inovio to (1) post a copy of the Notice and the Stipulation and exhibits thereto on the investor relations page of the Company's website; (2) publish the Notice in *Investor's Business Daily* or issue a press release with *GlobeNewswire*; and (3) file with the SEC the Notice and Stipulation and exhibits thereto as exhibits to an SEC Form 8-K | Not later than ten (10) days following the entry of the Preliminary Approval Order |
| Deadline to file documentation in support of the Settlement with the Court | At least twenty-eight (28) days prior to the Settlement Hearing |
| Deadline to file any objections to the Settlement with the Court | At least twenty-one (21) days prior to the Settlement Hearing |
| Deadline to file reply papers in support of the Settlement, if any, with the Court | At least seven (7) days prior to the Settlement Hearing |
| Settlement Hearing date | Fifty-five (55) days following the entry of the Preliminary Approval Order |

## VIII.  CONCLUSION

The Settlement requires Inovio to adopt, implement, and maintain the Reforms, which meaningfully address the issues Plaintiffs raised in the Derivative Matters.  The Settlement is an excellent resolution for Inovio of litigation of substantial complexity and cost.  Plaintiffs respectfully request that the Court preliminarily approve the Settlement, direct the issuance of the Notice, and schedule the Settlement Hearing to consider final approval of the Settlement.

April 19, 2023                                    Respectfully submitted,


**DONOVAN LITIGATION GROUP, LLC**

*/s/ Michael D. Donovan*
Michael D. Donovan
1885 Swedesford Road
Malvern, PA 19355
Telephone: (610) 647-6067
Email: mdonovan@donovanlitigationgroup.com

*Local Counsel for Plaintiffs*

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Co-Lead Counsel for Plaintiffs*

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10016
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Co-Lead Counsel for Plaintiffs*

**BEGLEY, CARLIN** & **MANDIO, LLP**
Breandan Q. Nemec (#PA 208355)
680 Middletown Boulevard
Langhorne, PA 19047
Telephone: (215) 750-0110
Facsimile: (215) 750-0954
Email: mail@begleycarlin.com

*Counsel for Plaintiff Beheshti*

21

**THE ROSEN LAW FIRM, P.A.**
Jacob Goldberg (#PA 66399)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com

*Counsel for Plaintiffs Devarakonda and Foster*

**PRIBANIC & PRIBANIC, LLP**
Vincent Coppola (#PA 50181)
513 Court Place
Pittsburgh, PA 15219
Telephone: (412) 281-8844
Facsimile: (412) 281-4740
Email: vcoppola@pribanic.com

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: gnespole@zlk.com

*Counsel for Plaintiff Fettig*